# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES PENA, | : | |
| Plaintiff, | : | No. 3:19-cv-261 (KAD) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | |

# INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, James Pena ("Pena"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Pena asserts claims for punishment as a pretrial detainee in violation of the Fourteenth Amendment, an unnecessary lack of privacy in violation of the Fourth Amendment, and denial of adequate access to the courts in violation of the Sixth Amendment. Pena names four defendants: Scott Semple,[1] John Aldi, A. Santiago, and Miaga. Pena seeks damages and injunctive relief. The complaint was received on February 22, 2019, and Pena's motion to proceed *in forma pauperis* was granted on February 27, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

---

[1] Pena incorrectly names former Commissioner Semple in the case caption as Scott Sempleton. Commissioner Semple is correctly named in the body of the complaint. The Court will use the correct spelling and directs the Clerk to correct the docket.

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

At all times relevant to this action, Pena was a pretrial detainee. In late 2013, while Pena was previously incarcerated, he was re-designated as a member of the Security Risk Group ("SRG") Blood based on a composition book containing fictitious rap songs using street slang. Correctional officials determined that the street slang constituted "gang moniker or gang languages." Doc. No. 1, ¶ 17. Pena disputes the validity of the re-designation because the word "language" was not added to the definition of the offense of SRG Affiliation until 2018. Pena served the remainder of his sentence in the SRG Program. He was discharged from custody on January 28, 2015.

In October 2017, Pena was arrested and sent to New Haven Correctional Center. He was

immediately separated from general population inmates and assigned to a restrictive housing unit. Pena was handcuffed when he left his cell, strip searched, denied telephone access, forced to eat in his cell, limited to three showers per week and two changes of clothes, and denied visits.

Pena was designated a Blood and transferred to an SRG block at Corrigan Correctional Institution ("Corrigan") because he had not completed the SRG Program before his release in 2015. He was not given a hearing before his re-designation and transfer.

At Corrigan, Blood members tried to extort payment from Pena and told him he could not live among them when he refused to pay. Pena told the defendants that his life was in danger because he was no longer an SRG member and requested placement in protective custody. Pena was placed in restrictive housing after he was assaulted by a Blood member for refusing to pay the extortion money.

Pena received a disciplinary report. He again asked to be transferred to protective custody. Instead, "without disposition," he was sent to the SRG Program in the Walker building at MacDougall-Walker Correctional Institution. Doc. No. 1, ¶ 30. In the SRG Program, Pena is permitted only three phone calls per week. This limits his ability to obtain witnesses in his favor, prepare his defense with his attorney, prepare for sentencing, and post bond. Pena is subject to forfeiture of Risk Reduction Earned Credit and is ineligible for community release.[2] Only immediate family members are permitted to visit him. Pena is housed with convicted inmates. He is permitted only three showers per week, is strip searched every time he leaves his cell, and denied access to a law library.

---

[2] As Pena is held on bond, not sentenced, it is unclear how these allegations apply to his situation or advance his claims.

Pena submitted a grievance complaining that he had inadequate access to his attorney because of the restrictions on personal phone calls and the limitation on legal calls and an unnecessary lack of privacy because of the excessive body cavity searches. He received no response. On January 2, 2019, Pena submitted an inmate request to the four defendants describing his conditions of confinement and claiming that his SRG placement as a pretrial detainee was unconstitutional. No defendant responded. Pena submitted an inmate request to defendant Miaga seeking a transfer. Defendant Miaga did not respond.

Defendant Aldi told Pena that he was going to designate Black P Stone members as Bloods and did not care whether Black P Stone was on the SRG list or Watch Group list or whether it was a subgroup of the Bloods. Although he does not state that he is a member of Black P Stone, Pena alleges that conversation is evidence of his wrongful placement.

**Discussion**

Pena alleges that all defendants violated his Fourteenth Amendment due process right to be free from punishment as a pretrial detainee by classifying him as SRG and housing him under restrictive conditions. He claims they violated his Fourth Amendment right to privacy by subjecting him to excessive and purposeless strip searches. Finally, he claims they violated his Sixth Amendment right of access to the courts by limiting him to two legal calls per month and three personal calls per week as a pretrial detainee.

### Classification and Confinement in SRG Program

Pena contends that, in October 2017, he was improperly re-designated SRG and returned to the SRG program as a pretrial detainee. He alleges that his designation upon his re-entry into the DOC was simply because of the 2013 "bogus" designation and because he had not completed

4

the SRG program before his release in 2015.

In November 2017, the Second Circuit considered a similar due process claim in *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017). There, the plaintiff had been returned to administrative segregation as a pretrial detainee simply because he had been in administrative segregation when last discharged from custody and he had not completed the administrative segregation program by the date of his prior discharge. *Id.* at 52. The Second Circuit held that the defendants violated Allah's substantive due process rights because the placement was not the result of any individualized assessment of the Plaintiff's risk to the security of the facility and was therefore punitive. *Id.* at 56-58. However, the Second Circuit also determined that the defendants were protected by qualified immunity. *Id.* at 58-59. The court determined that reasonable officers would not have understood that following the established departmental practice of returning readmitted inmates to the status they had at the time of their prior discharge, without any individualized assessment regarding the inmate's actual risk to the security of the facility, was unconstitutional. *Id.* at 59. After *Allah* however, it is clear that such conduct violates a pretrial detainee's substantive due process rights under the Fourteenth Amendment.

Pena challenges his designation as SRG in 2013 and resulting designation and placement in the SRG Program when he re-entered the DOC in 2017. However, the conduct complained of occurred in October 2017, prior to the *Allah* decision by the Second Circuit. Therefore, just as the defendants in *Allah* were protected by qualified immunity, so too are the defendants here. Accordingly, the Fourteenth Amendment claim based upon his designation and placement upon re-entry is dismissed.

5

However, the Complaint appears to also allege that the conditions of confinement in the SRG program are themselves punitive in violation of the Fourteenth Amendment. *See, Bell v. Wolfish,* 441 U.S. 520, 535 (1979) (pretrial detainee may not be punished prior to adjudication of guilt).

To state a claim for unconstitutional conditions of confinement, a pretrial detainee must show that the defendants acted with deliberate indifference to those conditions. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The deliberate indifference test has two parts. First, the detainee must show that, objectively, the conditions were "sufficiently serious to constitute objective deprivations of the right to due process." *Id.* Second, the detainee must show that the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (applying *Kinglsey v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015)).

Pena alleges that he was handcuffed when he left his cell, strip searched, denied telephone access, forced to eat in his cell, limited to three showers per week and two changes of clothes, and denied visits. These conditions, taken together, are sufficient to plausibly allege that Pena was punished as a pretrial detainee. Pena also alleges that the defendants intentionally placed him in the SRG program upon readmission to custody, satisfying the second component of the deliberate indifferent test. Pena's conditions of confinement claim will proceed at this time against all defendants.

**Right to Privacy**

Pena also contends that the defendants violated his Fourth Amendment right to privacy by subjecting him to excessive strip searches as a pretrial detainee. Inmates retain a limited right to bodily privacy under the Fourth Amendment. *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). When considering such a claim, the court undertakes a two-part inquiry. The court must first determine whether the inmate has "exhibit[ed] an actual, subjective expectation of bodily privacy." *Id.* (citation and internal quotation marks omitted). The court must then evaluate the defendants' justification for the intrusion. *Id.* As to the first inquiry, there is little question that a visual body cavity search is a "serious invasion of privacy." *Id.* at 58 (quoting *Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 344-45 (2012) (Breyer, J., dissenting) (internal quotation marks omitted). Thus, the Court will assume, for purposes of this analysis only, that Pena had a subjective expectation of privacy. The procedure to analyze the second requirement depends on whether the challenge is directed toward a prison regulation or policy, or toward one particular search. *Id.* at 57. Pena alleges that he was strip searched every time he left his cell. Thus, he is challenging a prison policy and the claim is analyzed under *Turner v. Safley*, 482 U.S. 78 (1987). *Id.*

The *Turner* inquiry requires the court to consider four factors when reviewing a prison regulation or policy: "(i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv)

7

whether there are reasonable alternatives available to the prison authorities." *Covino v. Patrissi,* 967 F.2d 73, 78-79 (2d Cir. 1992) (citing *Turner,* 482 U.S. at 89–90). The Court cannot evaluate these factors without additional information. Accordingly, this claim will proceed to enable Pena to further develop the record.

**Access to Courts**

Pina next alleges that the defendants violated his Sixth Amendment right of access to the courts by restricting his legal calls. "[I]nmates must have a reasonable opportunity to seek and receive the assistance of attorneys," and policies and practices that "unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez,* 416 U.S. 396, 419 (1974), *partially overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989). This right is especially critical during the period before trial. *See Maine v. Moulton,* 474 U.S. 159, 170 (1985) ("[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself.").

"[P]rison regulations restricting pretrial detainees' contact with their attorneys [are] unconstitutional where they 'unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Benjamin v. Fraser,* 264 F.3d 175, 187 (2d Cir. 2001) (quoting *Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir. 1978)). But an inmate need not allege that he suffered "actual injury" as a result of the defendants' actions. *Id.* at 185 ("[W]here the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury.'").

Pena alleges that he was permitted only two legal calls per month and three personal calls

8

per week. This allegation, standing alone, is insufficient to show that the defendants "unreasonably burdened" his opportunity to consult with his attorney. Pena does not allege that his attorney could not call him or visit him, or that he could not communicate with his attorney by letter. Presumably, Pena also met with his attorney at each of his scheduled court dates. An inmate's right to counsel is not unreasonably burdened if he has other means to contact his attorney. *See, e.g., Groenow v. Williams,* No. 13 Civ. 3961(PAC)(JLC), 2014 WL 941276, at *6-7 (S.D.N.Y. Mar. 11, 2014) (dismissing claim that inmate was required to call attorney on monitored phone as not plausibly alleging Sixth Amendment violation where inmate had alternate means of communicating with attorney) (citing cases). As Pena does not allege that he was unable to contact his attorney by other means, he fails to state a plausible Sixth Amendment claim. Pena's claim for denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Request for Relief**

Pena seeks damages from the defendants in both their individual and official capacities.[3] The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Pena has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, all claims against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

---

[3] Pena states in his introductory paragraph that he seeks injunctive relief. However, he requests only damages in his Prayer for Relief.

**Orders**

For all the foregoing reasons, the claims against the defendants in their official capacities, the Fourteenth Amendment claim regarding placement in the SRG Program, and the Sixth Amendment claim for denial of access to the courts are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The case will proceed on Pena's Fourth Amendment privacy claim and Fourteenth Amendment conditions of confinement claim against all defendants in their individual capacities.

The Court enters the following additional orders:

(1) **The Clerk shall** verify the current work addresses for defendants Semple, Aldi, Santiago, and Miaga with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) T**he Clerk shall** send Pena a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Pena changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Pena must give notice of a new address even if he is incarcerated. Pena should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Pena has more than one pending case, he should indicate all the case numbers in the notification of change of address. Pena should also notify the defendants or the attorney for the defendants of his new address.

(9) Pena shall utilize the Prisoner Efiling Program when filing documents with the court. Pena is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of March 2019.

/s/
Kari A. Dooley
United States District Judge