UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES PENA                            :            CIVIL NO. 3:19-CV-00261(KAD)

V.                                    :

SCOTT SEMPLE, ET AL.                  :            NOVEMBER 15, 2019

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## NOT IN DISPUTE PURSUANT TO LOCAL RULE 56(a)(1)

Pursuant to Local Rule of Civil Procedure 56(a)(1), the defendants, Scott Semple, Antonio Santiago, John Aldi, and David Maiga, submit this statement of undisputed material facts in support of their motion for summary judgment.

1. The plaintiff, James Pena, initiated this action by the filing of his Complaint on February 22, 2019.  (Doc. No. 1).

2. At the time the plaintiff commenced this action he was incarcerated within the Connecticut Department of Correction ("DOC") and was confined in a prison at the MacDougall-Walker Correctional Institution ("MWCI").   (Exhibit ("Ex.") C, James Pena's DOC Movement Sheet; Doc. No. 1, p. 2, ¶ 6).

3. The remaining claims in this action arise from the alleged conditions imposed on the plaintiff while he was a pretrial detainee in the Security Risk Group ("SRG") program. (Doc. No. 7, p. 6-8).

4. The Court authorized the plaintiff to proceed on a Fourth Amendment privacy claim based on the plaintiff's allegations that he was subjected to strip searches every time he left his cell in the SRG unit. (Doc. No. 7, p. 7-8).

5. The Court also authorized the plaintiff's Fourteenth Amendment conditions of confinement claim to proceed based on the plaintiff's allegations that he was

handcuffed when he left his cell, strip searched, denied telephone access, forced to eat in his cell, had limited showers and changes of clothes, and was denied visits. (Doc. No. 7, p. 5-6).

6. The Court limited the plaintiff's instant case to claims arising from his confinement as a pretrial detainee, and not claims arising from his confinement as a sentenced inmate. <u>See</u> (Doc. No. 14, p. 5) ("[T]his case concerns Pena's confinement in the SRG program as a pretrial detainee. It does not concern his confinement as a sentenced inmate or any threats to his safety as a sentenced inmate").

7. The plaintiff was a pretrial detainee within DOC's custody from October 6, 2017 until November 26, 2018, when the plaintiff became a sentenced inmate. (Ex. C).

8. During his time as a pretrial detainee, the plaintiff was housed at the New Haven Correctional Center ("NHCC"), from October 6, 2017 through October 18, 2017, and the Corrigan-Radgowski Correctional Center ("Corrigan") from October 18, 2018 through November 26, 2018. (Ex. C; Ex. A, Affidavit of Michelle King, ¶ 7; Ex. G, Affidavit of Krystal McNeill, ¶ 7).

9. On November 29, 2018, after the plaintiff was sentenced, he was transferred from Corrigan to MWCI. (Ex. C; Ex. A, ¶ 7; Ex. D, Affidavit of Jessica Bennett, ¶ 8).

10. One of the defenses asserted in this case is that the plaintiff failed to properly exhaust his administrative remedies prior to filing the instant suit as required by the Prison Litigation Reform Act ("PLRA"). (Doc. No. 29, p. 7; Doc. No. 16, p. 8).

11. For the plaintiff to properly exhaust his administrative remedies, DOC requires the plaintiff to file grievances and follow the procedures laid out in DOC Administrative Directive ("AD") 9.6. (Ex. F, DOC AD 9.6); <u>see</u> <u>also</u> <u>Riles v. Buchanan</u>, 656 Fed.

App'x. 577, 579 (2d Cir. 2016) (Summary Order) ("The Connecticut Department of Correction ('DOC') requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')").

12. AD 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form (Form CN 9601), prior to filing a formal grievance.  (Ex. F, p. 5, ¶ 6 (A)).  In the Inmate Request Form, the "inmate must clearly state the problem and the action requested to remedy the issue" and the appropriate correctional official has fifteen business days to respond to the request.  (Id.).

13. If the inmate is not satisfied with the informal resolution response he receives or he does not receive a response, the inmate must file a Level-1 grievance (Form CN 9602) and attach the Inmate Request Form showing his attempts to resolve the issue informally, among other requirements.  (Ex. F, p. 5-6, ¶ 6 (C)).

14. An inmate's Level-1 grievance must be submitted within thirty calendar days "of the occurrence or discovery of the cause of the grievance" and the appropriate correctional official has thirty business days to respond.  (Ex. F, p. 5-6, ¶ 6 (C)).

15. If an inmate is not satisfied with the response to his Level-1 grievance, or no response is provided within the thirty-days, the inmate may submit a Level-2 appeal within five days after receipt of the response.  (Ex. F, p. 7, ¶ 6 (I) & (K)).

16. The Level-2 appeal constitutes the final level of appeal for all inmate grievances except for those that (a) challenge department policy, (b) challenge the integrity of the grievance procedure, or (c) exceed the thirty-day limit for a Level-2 appeal response.  (Ex. F, p. 7, ¶ 6 (L)).

17. Pursuant to AD 9.6, the plaintiff must file a Level-1 grievance within thirty days of the occurrence or discovery of the cause of the grievance.  (Ex. F, p. 5, ¶ 6 (A)).

18. Given that the plaintiff's instant suit relates to his time as a pretrial detainee, the plaintiff had, at the latest, thirty days from the date he became a sentenced prisoner on November 26, 2018, or by December 26, 2018, to file a Level-1 grievance regarding the conditions imposed on him as a pretrial detainee.   (Ex. F, p. 5, ¶ 6 (C); Ex. C).

19. During the time period that the plaintiff was a pretrial detainee he was housed at NHCC and Corrigan; however, the plaintiff was also housed at MWCI during the time period he could have filed a Level-1 grievance regarding the conditions imposed on him as a pretrial detainee, as he was transferred to MWCI on November 29, 2018, only days after becoming a sentenced inmate on November 26, 2018.  (Ex. C; Ex. A, ¶ 7; Ex. D, ¶ 8; Ex. G, ¶ 7).

20. At NHCC, Corrigan, and MWCI, inmates file their Level-1 grievances and grievance appeals in a designated "Administrative Remedies" box that is clearly marked and accessible to the inmates at each facility.  (Ex. A, ¶ 6; Ex. D, ¶ 6; Ex. G, ¶ 6).

21. At each of these facilities, the grievances and grievance appeals are collected by staff on a daily basis, Monday through Friday, and are logged into a Grievance Log (Form CN 9608) upon receipt.  (Ex. A, ¶ 6; Ex. D, ¶ 7; Ex. G, ¶ 6; Ex. F, p. 8-9, ¶ 6 (P)(1)(b)).

22. Krystal McNeill is the Administrative Remedies Coordinator ("ARC") at NHCC, and in that position, is the keeper of records of grievances and grievance appeals filed by

inmates at NHCC pursuant to AD 9.6, including the NHCC Grievance Log (Form CN 9608).  (Ex. G, ¶¶ 3-5).

23. During the time period the plaintiff was housed at NHCC as a pretrial detainee, from October 6, 2017 until October 18, 2017, the plaintiff did not file any Level-1 grievances or Level-2 grievance appeals.  (Ex. G, ¶¶ 9-10).

24. The NHCC Grievance Log (Form 9608) from October 2017 reveals that grievances were filed by inmates at NHCC during this time; however, none of those grievances were filed by the plaintiff.  (Ex. H, NHCC Grievance Log; Ex. G, ¶ 10).

25. Michelle King is the ARC at Corrigan, and in that position, is the keeper of records of grievances and grievance appeals filed by inmates at Corrigan pursuant to AD 9.6, including the Corrigan Grievance Log (Form CN 9608).  (Ex. A, ¶¶ 3-5).

26. During the time period the plaintiff was housed at Corrigan, from October 18, 2017 until November 29, 2018, the plaintiff filed seven Level-1 grievances and five Level-2 grievance appeals.  (Ex. A, ¶¶ 7, 9-10; Ex. C).

27. The seven grievances and five grievance appeals filed by the plaintiff at Corrigan do not relate to any specific conditions of confinement imposed on the plaintiff as a pretrial detainee, including being subjected to excessive strip searches, nor were any of these grievances ever properly exhausted in accordance with AD 9.6.  (Ex. A, ¶ 9; Ex. I, Corrigan Grievances, p. 1-19).

28. The first grievance filed by the plaintiff at Corrigan, #140-19-063, was received on January 4, 2019, and related to an alleged assault that occurred on the plaintiff on a specific date in November of 2018 at Corrigan, and the plaintiff's placement in the SRG unit generally.  (Ex. I, Corrigan Grievances, p. 1-2).  This grievance was

rejected as untimely on January 11, 2019, and the plaintiff filed a Level-2 appeal of this rejection.  (Id. at 2-3).  The plaintiff's appeal of this grievance was also rejected as untimely on February 14, 2019, and was not exhausted.  (Id. at 3; Ex. A, ¶ 9; Ex. F, p. 6, ¶ 6(C) & (F)).

29. The second grievance filed by the plaintiff at Corrigan, #140-19-064, was received on January 4, 2019, and related to a specific incident that occurred at Corrigan on November 14, 2018 when the plaintiff was allegedly subjected to excessive force by correctional officials.  (Ex. I, p. 4-5).  This grievance was rejected on January 11, 2019 as untimely, and the plaintiff filed a Level-2 appeal of this rejection.  (Id. at 5-6). The plaintiff's appeal of this grievance was also rejected as untimely on February 14, 2019, and was not exhausted.  (Id. at 6; Ex. A, ¶ 9; Ex. F, p. 6, ¶ 6(C) & (F)).

30. The third grievance filed by the plaintiff at Corrigan, #140-19-072, was received on February 1, 2019, and related to the plaintiff's requests in June of 2018 to be removed from the SRG program due to the fact that he felt unsafe in the SRG unit due to his criminal charges.  (Ex. I, p. 7-8).  This grievance was rejected on February 1, 2019 as untimely, and the plaintiff filed a Level-2 appeal of the rejection of this grievance.  (Id. at 8-9).  The plaintiff's appeal of this grievance was also rejected as untimely on March 27, 2019, and was not exhausted.  (Id. at 9; Ex. A, ¶ 9; Ex. F, p. 6, ¶ 6(C) & (F)).  Moreover, the decision rejecting the plaintiff's grievance appeal was not rendered until March 27, 2019, after the plaintiff had already filed the instant suit on February 22, 2019.  (Ex. I, p. 9; Doc. No. 1).

31. The fourth grievance filed by the plaintiff at Corrigan, #140-19-073, was received on February 1, 2019, and related to a specific incident that occurred at Corrigan on

November 14, 2018 when the plaintiff was allegedly subjected to excessive force by correctional officials. (Ex. I, p. 10-11). This grievance was rejected on February 1, 2019 as being repetitive of a previous grievance, #140-19-064, which was still being processed at the time. (Id. at 11; Ex. F, p. 4, ¶ 5(E)(7)). The plaintiff did not file an appeal of said rejection in accordance with AD 9.6, and this grievance was not exhausted. (Ex. A, ¶ 9; Ex. F, p. 7, ¶ 6(K)).

32. The fifth grievance filed by the plaintiff at Corrigan, #140-19-074, was received on February 1, 2019, and related to the plaintiff's requests to be removed from the SRG unit and placed in protective custody due the plaintiff's claims that he was not a gang member and due to his criminal charges, and also related to a correctional staff member's alleged failure to respond to his previous requests. (Ex. I, p. 12-13). This grievance was rejected on February 1, 2019 as being repetitive of a previous grievance, #140-19-063, which was still being processed at the time. (Id. at 13; Ex. F, p. 4, ¶ 5(E)(7)). The plaintiff did not file an appeal of said rejection in accordance with AD 9.6, and this grievance was not exhausted. (Ex. A, ¶ 9; Ex. F, p. 7, ¶ 6(K)).

33. The sixth grievance filed by the plaintiff at Corrigan, #140-19-075, was received on February 1, 2019, and related to a specific incident that occurred at Corrigan on November 14, 2018 when the plaintiff was allegedly assaulted and correctional staff allegedly failed to prevent this assault. (Ex. I, p. 14-15). This grievance was rejected on February 1, 2019 as being repetitive of a previous grievance, #140-19-063, which was still being processed at the time. (Id. at 15; Ex. F, p. 4, ¶ 5(E)(7)). The plaintiff filed a Level-2 appeal of the rejection of this grievance, and the plaintiff's grievance appeal was also rejected on the same grounds on March 27, 2019, and

was not exhausted.  (Ex. I, p 15-16; Ex. A, ¶ 9).  Moreover, the decision rejecting the plaintiff's grievance appeal was not rendered until March 27, 2019, after the plaintiff had already filed the instant suit on February 22, 2019.  (Ex. I, p. 16; Doc. No. 1).

34. The seventh and final grievance filed by the plaintiff at Corrigan, #140-19-076, was received on February 1, 2019, and related to the plaintiff's alleged misplacement in the SRG unit and requests to return to general population.  (Ex. I, p. 17-18).  This grievance was rejected on February 1, 2019 as the plaintiff had previously filed an administrative appeal of his SRG designation.  (Id. at 18).  The plaintiff filed a Level-2 appeal of the rejection of this grievance, and the plaintiff's grievance appeal was also rejected on the same grounds on March 27, 2019, and was not exhausted.  (Id. at 18-19; Ex. A, ¶ 9).  Moreover, the decision rejecting the plaintiff's grievance appeal was not rendered until March 27, 2019, after the plaintiff had already filed the instant suit on February 22, 2019.  (Ex. I, p. 19; Doc. No. 1).

35. The Corrigan Grievance Log (Form 9608) from October 1, 2017 through March 1, 2019 reveals that numerous grievances were filed by inmates at Corrigan during this time period, including the seven grievances and five grievance appeals filed by the plaintiff; however, the log fails to reveal any additional grievances or grievance appeals filed by the plaintiff.  (Ex. B, Corrigan Grievance Log, p. 1-41; Ex. A, ¶ 10).

36. Officer Jessica Bennett is the ARC at MWCI, and in that position, is the keeper of records of grievances and grievance appeals filed by inmates at MWCI pursuant to AD 9.6, including the MWCI Grievance Log (Form CN 9608).  (Ex. D, ¶¶ 3-5).

37. During the time period the plaintiff was housed at MWCI prior to filing the instant suit, from November 29, 2018 through February 22, 2019, the plaintiff filed only two

Level-1 grievances, and did not file any Level-2 grievance appeals.  (Ex. D, ¶¶ 8, 10-11; Ex. C; Doc. No. 1).

38. The two Level-1 grievances filed by the plaintiff at MWCI were assigned tracking numbers 137-19-208 and 137-19-234 and do not relate to the specific conditions imposed on the plaintiff as a pretrial detainee, including being subjected to excessive strip searches, nor were these two grievances ever properly exhausted in accordance with AD 9.6.  (Ex. D, ¶ 10; Ex. J, MWCI Grievances, p. 1-4).

39. The first grievance filed by the plaintiff at MWCI, #137-19-208, was received on January 23, 2019, and related to an alleged assault that occurred on the plaintiff and the plaintiff's desire to be removed from the SRG program.  (Ex. J, p. 1-2).  This grievance was rejected on February 8, 2019 as untimely and the plaintiff never appealed said rejection in accordance with AD 9.6, and this grievance was not exhausted.  (Id. at 2; Ex. D, ¶ 10; Ex. F, p. 7, ¶ 6(K)).

40. The second grievance filed by the plaintiff at MWCI, #137-19-234, was received February 20, 2019, and related to the plaintiff's claim that he was improperly designated with a SRG affiliation upon his re-admission to DOC.  (Ex. J, p. 3-4).  This grievance was denied on March 8, 2019, and the plaintiff never appealed said denial in accordance with AD 9.6, and this grievance was not exhausted.  (Id. at 4; Ex. D, ¶ 10; Ex. F, p. 7, ¶ 6(K)).  Moreover, the plaintiff did not receive his response to this grievance until March 8, 2019, after the plaintiff filed the instant suit on February 22, 2019.  (Ex. J, p. 4; Doc. No. 1).

41. The MWCI Grievance Log (Form 9608) from the time period the plaintiff was housed at MWCI in 2018 and 2019 reveals that numerous grievances were filed by

9

inmates at MWCI, including the two grievances filed by the plaintiff; however, the log

fails to reveal any other grievances or grievance appeals filed by the plaintiff.  (Ex. E,

MWCI Grievance Log, p. 1-27; Ex. D, ¶ 11).[1]

42.  Although the plaintiff was placed on a "grievance restriction" as indicated in his

Amended Complaint, (Doc. No. 28, ¶ 38), this did not occur until February 14, 2019.

(Ex. K, Grievance Restriction Letter).  This grievance restriction was placed on the

plaintiff, in accordance with AD 9.6, for his abuse of the Administrative Remedies

procedure, and it restricted his ability to file administrative remedies, permitting him

to file only one grievance per month.  (Id.; Ex. F, p. 8, ¶ 6(O)).

43. As demonstrated in the plaintiff's grievance #137-19-234, which was filed on

February 16, 2019 and received on February 20, 2019, the plaintiff was still

permitted to file a grievance after the restriction was imposed; however, this

grievance was never fully exhausted, nor did it relate to any of the conditions

imposed on the plaintiff as a pretrial detainee which are subject of this suit.  (Ex. J, p.

3-4; Ex. D, ¶ 10).

44. The plaintiff has not indicated that DOC's administrative remedy procedure was

unavailable to him; rather, he explicitly stated that he exhausted his administrative

remedies prior to filing this lawsuit in both his original Complaint on February 22,

2019, and again in his Amended Complaint on October 28, 2019.  (Doc. No. 1, p. 2,

¶ 11; Doc. No. 28, p. 2, ¶ 11).

---

[1] The defendants have included the MWCI Grievance Log from November 1, 2018 until
April 1, 2019, to make sure that any and all grievances the plaintiff may have filed at
MWCI are included, to demonstrate the plaintiff's failure to exhaust.  The plaintiff was
transferred from MWCI on March 28, 2019, more than a month after filing the instant
suit.  (Doc. No. 1; Ex. C; Ex. D, ¶ 8).

45. The plaintiff also had access and the ability to file grievances, as demonstrated by the nine separate Level-1 grievances and five separate grievance appeals he filed while at Corrigan and MWCI.  (Ex. A, ¶ 9; Ex. D, ¶ 10; Ex. I, p. 1-19; Ex. J, p. 1-4).

46. The DOC administrative remedies were in fact available to the plaintiff and the plaintiff is not excused from the exhaustion requirements of the PLRA.  See Ross v. Blake, 136 S. Ct. 1850, 1862 (2016).

<div style="margin-left: 40%;">

DEFENDANTS,
SEMPLE, ALDI, SANTIAGO, & MAIGA

WILLIAM TONG
ATTORNEY GENERAL

BY:         /s/
Edward D. Rowley
Assistant Attorney General
Federal Bar No. ct30701
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Fax: (860) 808-5591
E-Mail: Edward.rowley@ct.gov

</div>

## CERTIFICATION

I hereby certify that on November 15, 2019 a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.  A copy was also sent to the following by first-class mail, postage prepaid, to:

James Pena #378668
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06078

<div style="margin-left: 40%;">

_____/s/_____
Edward D. Rowley
Assistant Attorney General

</div>